UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DAVIN HANKS, <br> Plaintiff | CIVIL ACTION NO. 1:15-CV-01740; <br> SEC. P |
| VERSUS | CHIEF JUDGE DRELL |
| DANIEL MARR, ET AL., <br> Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

*Pro se* prisoner Davin Hanks ("Hanks") filed a complaint pursuant to 42 U.S.C. § 1983 on May 20, 2015, and amended on August 21, 2015. Hanks complains Defendant Daniel Marr ("Marr") deprived him of adequate dental care at Winn Correctional Center ("WNC"). Hanks asserts the same claims against Defendants Nate Cain, Edmond Smith, and Sandra Sibley, at Avoyelles Correctional Center ("ACC"). (Docs. 1, 6). Hanks was incarcerated at ACC at the time he filed his Complaint. Hanks seeks monetary and injunctive relief. (Docs. 1, 6).

Marr filed a Motion for Summary Judgment, seeking dismissal of all claims against him. (Doc. 37).[1] Marr contends that Hanks never filed a sick call for formal evaluation of his dental complaints. Furthermore, Marr states that he would not be the person to have provided treatment to Hanks, since Marr was the medical director, and not a dentist. (Doc. 37-3).

---

[1] Although Marr references the deposition testimony of Hanks several times throughout his Motion for Summary Judgment, it appears that Defendant did not attach the transcript to their motion.

Hanks filed a memorandum in opposition (Doc. 42) to which Marr replied (Doc. 43). Hanks then improperly filed a motion entitled "Opposition to Reply Memorandum." (Doc. 45).[2]

## I. Background

Hanks is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("DOC"), and was incarcerated at ACC when he filed his Complaint. Hanks claims that he was never scheduled to see a dentist despite making several written requests for dental care. (Doc. 6, p. 4).

Prior to being moved to WNC, Hanks was at Elayn Hunt Correctional Center ("EHCC"). Hanks contends that the medical records WNC received from EHCC included standing orders for dental treatment. He states that the dental assessment performed on November 28, 2012 specifically ordered the treating physician at WNC to fill #10. (Doc. 42-1, p. 2/4). That record, dated November 28, 2012, actually has a check list, and the dentist checked the box to "[s]eek Treatment at permanent facility." (Doc. 37-3, Med. Rec., p. 145/145).

Hanks was incarcerated at WNC from December 10, 2012, through May 4, 2015. (Doc. 37-3, Med. Rec.[3], pp. 8, 18/145). Hanks states that he was placed in protective custody on December 10, 2013, where he remained for seventeen months. (Doc. 6, p. 4).

---

[2] The Notice of Motion Setting requires leave of court to file any additional briefs that are not Plaintiff's response to Defendant's Motion for Summary Judgment or Defendant's reply to Plaintiff's response.

[3] Med. Rec. refers to Hanks's medical records, found in Document 37-3, with pages numbered from 1 to 145. Marr Aff. refers to Marr's affidavit, also found in Document 37-3.

2

Upon arrival at WNC, Hanks executed a form indicating that he had been informed how to access both medical and dental care in all housing areas, including segregation. (Doc. 37-3, Med Red., p. 9/145). That policy required inmates to submit a sick call form to obtain dental care. (Id.). On December 13, 2012, intake personnel at WNC conducted a health appraisal of Hanks. The appraisal indicated that Hanks denied any medical complaints. (Doc. 37-3, Med. Rec., pp. 21-23/145).

On August 26, 2014, Hanks contends that he submitted an Inmate Request Form to Marr, stating that his teeth were rapidly decaying and that he was in need of dental care. (Doc. 6, pp. 4, 9). Hanks states he did not receive a response. (Doc. 6, p. 4).

Hanks also claims that he asked several nurses to make a sick call to see the dentist, but that the nurses told him it was pointless because inmates are not transported from lockdown to the infirmary just to see a dentist. (Doc. 6, p. 4).

On January 8, 2015, Hanks submitted a grievance form regarding dental care. In response, the official stated that Hanks had not placed any sick call requests for dental care, and informed Hanks that he had received information that access to medical and dental care was handled through sick call. (Doc. 6, p. 10).

On January 25, 2015, Hanks submitted an Inmate Request Form. There are checkboxes on the form indicating to whom the request form is directed. The "Medical Director" box was checked, but with "Dentist" handwritten beside it. On that form, Hanks wrote "I have several teeth that have decayed and are in need of repair but the question I wanna [sic] ask is must I go back to or be in general population in order

3

to receive the necessary treatment I need to properly fix my teeth? When they don't necessary [sic] need to be pulled only treated." In response, an official wrote: "You can only be transported out of lockdown for treatment of urgent needs. Routine dental care does not qualify as an urgent need." (Doc. 6, p. 8).

On May 4, 2015, Hanks was transferred from WNC to ACC. The initial health screening indicated cavities on Hanks' top and bottom teeth. (Doc. 37-3, Med. Rec., p. 18/145).

On May 27, 2015, Hanks had a dental evaluation. Recommended treatment included filling the #4 and #10 teeth. (Doc. 37-3, Med. Rec., p. 141/145).

## II.  Law and Analysis

### A.  Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[4]

---

[4] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

B.   Deliberate Indifference

Hanks is a convicted inmate. Therefore, his claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail, a plaintiff must establish that the response to a prisoner's medical needs was sufficiently harmful to evidence deliberate indifference. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-40 (1994). Furthermore, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Tx., 245 F.3d 447, 459 (5th Cir. 2001).

The Court must balance the needs of prisoners against the needs of the penal institution in light of medical necessity, not desirability. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). The fact that a plaintiff does not believe his medical treatment is as good as it should be is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Disagreement with the medical treatment does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

### C. Respondeat Superior

The doctrine of *respondeat superior*, which makes an employer or supervisor vicariously liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Supervisory officials cannot be held liable for their subordinates' actions. To the extent a plaintiff wishes to sue a medical director or other official in his supervisory capacity, the plaintiff must allege facts that demonstrate either personal involvement or the implementation of unconstitutional policies. Specifically, a supervisory official "may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation;, or (2) implement unconstitutional policies that causally result in plaintiff's injury." Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996); see also Davidson v. Wilkinson, No. 10-CV-1458, 2010 WL 5507921, at *1 (W.D. LA. Dec. 13, 2010).

D. <u>Analysis</u>

Hanks claims that Marr was deliberately indifferent to his medical needs. Hanks contends that Marr knew of his need for dental treatment due to the evaluation conducted at EHCC but refused to treat him. Hanks additionally claims that Marr, as the medical director, is liable for the supervision and management of his subordinates, and is also liable for the policy and procedure that prevents inmates from being transferred from lockdown to be treated for non-urgent needs. (Doc. 42-1, p. 3/4).

The medical records show that Hanks did not file any sick calls for dental treatment while housed at WNC. Instead, Hanks attached two Inmate Request Forms as exhibits to his Complaint. (Doc. 6). An inmate request form is an administrative form that an inmate may use to request various services or information, and does not automatically place an inmate on any medical or dental callout as a sick call form would. (Doc. 37-3, Marr Aff., pp. 3-4). In contrast, a sick call form is a specific type of form that requests medical treatment. (<u>Id.</u>). Filing a sick call form leads to the inmate being "called out" to the infirmary for treatment, typically within 72 hours of the request being filed. (<u>Id.</u>).

Additionally, Marr states that inmates in the Cypress Lockdown Unit are not typically called out for routine matters, but a nurse would have been on duty in that unit. (<u>Id.</u>). When an inmate housed in that unit files a sick call, the nurse would typically handle routine matters there, but could also refer the inmate to the infirmary, physician, or dentist, as necessary. If the inmate did not file a sick call, the

7

inmate would not receive medical or dental care. (Id.). Marr states that he was aware of the sick call procedures. (Doc. 37-3, Marr Aff., p. 2). However, Marr did not implement this policy requiring sick calls for dental treatment, nor did he have influence over it, as Corrections Corporation of America ("CCA") implemented the policy of requiring sick calls for dental treatment. (Doc. 37-3, Marr Aff., p. 4).

On the January 25, 2015 Inmate Request Form, Hanks stated that he is in need of dental treatment, and that he has several teeth that have decayed, but that "the question I wanna ask is must I go back to or be in general population in order to receive the necessary treatment I need to properly fix my teeth? When they don't necessarily need to be pulled only treated." (Doc. 6-1, p. 1/6). In his opposition, Hanks specifically states that he "used and elected a request form to obtain answers to his questions and concerns and not immediate dental treatment." (Doc. 42-3, p. 2/9).

In response to Hanks Inmate Request Form, an official responded: "You can only be transported out of [Cypress Unit] lockdown for treatment of urgent needs. Routine dental care does not qualify as an urgent need." (Id.). Marr asserts that he was not the one who responded to that Inmate Request Form. (Doc. 37-3, Marr. Aff., p. 4).

Hanks states that he also submitted an additional Inmate Request Form, dated August 26, 2014, stating he had a serious medical need as several of his teeth were decaying. However, that form is not date stamped, nor is there any staff response. It is therefore unclear that this form was ever submitted. (Doc. 6, p. 9/14).

8

Although Hanks did not file any sick calls seeking dental treatment, he did utilize sick call forms to seek other medical care while he was housed in Cypress Unit. These include an October 2, 2013 sick call for loss of weight, (Doc. 37-3, Med. Rec., pp. 114-15/145); a December 2, 2013 sick call after falling from the top bunk[5], (Doc. 37-3, Med. Rec., pp. 104-07/145); and a March 5, 2015 sick call for an alleged beating by a prison guard (Doc. 37-3, Med. Rec., pp. 87-90/145).

Other than the Inmate Request Form, Hanks alleges that WNC's intake personnel received his medical records from EHCC, which included standing orders for Hanks's dental treatment. He states that it specifically ordered the treating physician at WNC to fill #10. (Doc. 42-1, p. 2/4). As noted previously, that document, dated November 28, 2012, has a check list of options, and the dentist checked the box to "[s]eek Treatment at permanent facility." (Doc. 37-3, Med. Rec., p. 145/145). However, it does not appear that Hanks ever sought treatment while housed at WNC, as there are no sick calls complaining of dental issues.

Hanks was aware of WNC's policy requiring the submission of a sick call form in order to address a medical or dental concern. (Doc. 37-3, p. 9/145). Yet he never filed a sick call seeking dental treatment, although he utilized the sick call procedure for other medical needs while housed in Cypress Unit. Instead of seeking dental treatment when he arrived at WNC, he filed a single Inmate Request Form asking if he needed to be in general population to receive dental treatment. He was informed

---

[5] Hanks stated that he did not personally fill out this sick call. Even if true, Hanks still knew how to utilize the sick call process, as evidenced by Hanks submitting sick call forms on at least two other occasions. (See. Doc. 45, p. 3/4).

that he could be transported out of lockdown for urgent needs, but not routine dental care. (Doc. 6, p. 8/14). However, Hanks never filed a sick call to have the nurse in the unit assess whether his dental needs were urgent or routine. Furthermore, there is no evidence that Marr was aware of this form. Hanks presents no evidence that Marr was aware of Hanks's dental needs, refused treatment to Hanks, or otherwise disregarded his serious medical needs.

Furthermore, Hanks has presented no evidence that the sick call procedure was legally deficient, or that Marr was responsible for that policy. Therefore, as Marr is a supervisory official, Marr cannot be held liable for this claim.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendant Daniel Marr's Motion for Summary Judgment (Doc. 37) be GRANTED, and that Plaintiff's claims against Defendant Marr be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __24th__ day of March, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge