UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DAVIN HANKS #399204,<br>Plaintiff | CIVIL ACTION NO. 1:15-CV-01740 |
| VERSUS | CHIEF JUDGE DRELL |
| DANIEL MARR, *ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

On May 20, 2015, pro se Plaintiff Davin Hanks (#399204) ("Hanks"), proceeding *in forma pauperis*, filed a civil rights complaint, as amended on August 21, 2015 (Doc. 6), under 42 U.S.C. § 1983. Hanks is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("DOC"). He is currently incarcerated at Raymond Laborde Correctional Center ("RLCC") (formerly Avoyelles Correction Center ("AVC")) in Cottonport, Louisiana.[1] The remaining defendants are Nathan "Nate" Cain (former warden of AVC) ("Cain"), Sandra Sibley (Director of Nursing, AVC) ("Sibley"), and Dr. George E. Smith, III (named as "Edmond Smith" in the Complaint) (Medical Doctor, AVC) ("Dr. Smith") (collectively "Defendants").[2] Plaintiff alleges he has been deprived of necessary and adequate medical (dental) care by Defendants, at AVC, in violation of his Eight Amendment constitutional rights (Doc. 6).

---

[1] Hanks was transferred from Winn Correctional Center ("WCC") to AVC on May 4, 2015)(Doc. 6; Doc. 52; Doc. 62-1).
[2] The other named defendant, Daniel Marr (Medical Director, WCC) ("Marr"), was dismissed with prejudice on April 7, 2017 (Doc. 55).

1

Defendants answered the Amended Complaint (Doc. 20) and filed the instant Motion for Summary Judgment (Doc. 52), which Hanks opposes (Doc 62). Defendants seek dismissal of Hanks' allegations for failure to properly exhaust administrative remedies at AVC (Doc. 52). Additionally, Defendants seek dismissal for Hanks' failure to state a claim upon which relief can be granted; on grounds that Defendants are entitled to Qualified Immunity under the Eleventh Amendment; and on grounds that Hanks will be unable to meet his burden of proof that any of the named Defendants were deliberately indifferent to his serious medical (dental) needs (Doc. 52).

Hanks failed to exhaust his administrative remedies with AVC prior to filing suit. Therefore, Defendants' Motion should be **GRANTED**.

I. Background

In his Amended Complaint filed on August 21, 2015, Hanks brought claims against Cain, Sibley, and Dr. Smith (Doc. 6). From December 5, 2012 to May 4, 2015, Hanks was an inmate housed at WCC (Doc. 6; Doc. 62-1). In December of 2013, he was placed in Protective Custody ("PC") by a U.S. District Court's Protective Order, where he remained for seventeen months (Doc. 6). Throughout his stay on PC, he alleges he experienced further deterioration and decay of several of his teeth in various stages of decay and in need of restoration treatments to prevent extraction (Doc. 6).

Hanks alleges he exhausted the administrative prison grievance procedure, ARP number WNC-2015-48, through the second step (Doc. 6; Doc. 62-1). Hanks

2

provided with exhibits to his Amended Complaint a First Step Response Form, Case Number WNC-2015-48, dated March 6, 2015 (Doc. 6-1, 3). The first step response from WNC denied his grievance because WNC showed no sick call requests for dental care by Hanks (Doc. 6-1, p. 3).

Hanks proceeded to Step Two, expressing his dissatisfaction by way of the Response Form, dated March 12, 2015 (Doc. 6-1, 3). The Secretary of DOC issued a Second Step Response Form, dated May 11, 2015, denying Hanks request for relief (Doc. 6-1, 4). The allegations contained in grievance WNC-2015-48 consisted of Hanks' allegations of deprivation of dental care while housed at WNC and against defendant Daniel Marr (Doc. 6, p. 4).

On May 4, 2015, Hanks was transferred to AVC, where he alleges he was seen by a dentist for a routine examination. It was determined that four of his teeth would have to be extracted (Doc. 6). He was told he would have to be rescheduled for an appointment to begin the process (Doc. 6). Hanks alleges that same dentist diagnosed and informed him that four of his teeth were "in the roots and beyond any repair and would require extraction" (Doc. 6). He alleges he was told all four could have been saved "if fixed earlier on, and a matter of months could have made all the difference" (Doc. 6).

Hanks alleges that three months later on July 28, 2015, he made a sick call, complaining of two toothaches from the teeth requiring extraction (Doc. 6-1, p. 5). On this date, he alleges he was examined by Sibley, Director of Nursing at RLCC (formerly AVC), who informed him there is currently no dentist employed at AVC,

and it could be some time before he would get to see one for his toothaches and extractions (Doc. 6).  Hanks was further informed that Dr. Smith would be reviewing the matter (Doc. 6).

Hanks alleges Dr. Smith reviewed his chart on July 30, 2015, and instead of ordering the necessary treatment as per standing orders, prescribed 600 milligram (mg) Motrin to be taken three times daily for the next six months (Doc. 6-1, p. 6). Hanks alleges he was not seen by any physicians subsequent to placing his sick call; was not properly diagnosed or treated by either Sibley or Dr. Smith; and was denied access to personnel with qualified medical expertise (Doc. 6).

Hanks alleges Cain (former warden of AVC) is responsible for system deficiencies in medical staffing, making unnecessary suffering inevitable such that it is "deliberately indifferent," grossly incompetent, inadequate and excessive as to shock the conscience, or so inappropriate as to evidence intentional maltreatment, in violation of the Eighth Amendment (Doc. 6).

Hanks alleges Sibley was not qualified to diagnose and treat him, and that he should have been seen emergently by a physician (Doc. 6).  He alleges Dr. Smith had knowledge of Hanks' serious medical needs, but failed to provide direct attention to his needs, instead prescribing Motrin for his aches (Doc. 6).  He alleges he has been made to endure unnecessary suffering for an undetermined period of time until a dentist becomes employed at AVC (Doc. 6).

II. Law and Analysis

   A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[3]

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir.), cert. denied, 528 U.S. 906 (1999) (internal citations omitted). "A genuine dispute of material fact exists 'if the evidence is such

---

[3] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

5

that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the nonmovant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact. Herrera v. Millsap, 862 F.2d 1157, 115 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).

A. Exhaustion

1. Louisiana requires a two-step ARP prior to filing suit in federal or state court.

In Louisiana, an inmate must follow a two-step ARP process to exhaust administrative remedies before filing suit in district court. See 22 La. A.D.C. Pt. 1, § 325 (2013). Section 325(F)(3)(a)(viii) states that, "[p]rior to filing a grievance in federal or state court, unless specifically excepted by law, the offender must exhaust all administrative remedies, said exhaustion occurring:

    (a) when the relief request has been granted;
    (b) when the second step response has been issued; or
    (c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening."

Section 325(E) defines a grievance as "a written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an offender of an institution or an incident occurring within an institution." Section 325(F)(3)(a)(xi) provides that "[w]hen an offender has filed a request at one institution and is transferred prior to the review, or if he files a request after transfer on an action taken by the sending institution, the sending institution shall complete the processing through the first step response. The warden of the receiving institution shall assist in communication with the offender."

A prisoner's first step grievance is initiated by completing a request for administrative remedy or writing a letter to the warden setting forth the basis for his claim and relief sought, and containing the phrase; "This is a request for administrative remedy or ARP." 22 La. A.D.C. Pt. 1, § 325(G)(1). The first step of the grievance processing is inquiry into the allegation and response from the warden to the offender. 22 La. A.D.C. Pt. 1, § 325(J)(1)(a).

The inmate may proceed to the second step of the ARP by appealing to the Secretary of the Department of Public Safety and Corrections ("Secretary of DOC") by indicating he is dissatisfied with the first step response and forwarding it to the ARP screening officer within five days of receipt of the decision. A final decision will be made within 45 days from the date of the request. If an offender is not satisfied with the second step response, he may file suit in district court. 22 La. A.D.C. Pt. 1, § 325(J)(1)(b).

2. <u>**Under the Prison Litigation Reform Act, a prisoner must exhaust administrative remedies, as available, prior to bringing suit under 42 U.S.C. § 1983.**</u>

As Defendants point out, the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007). Exhaustion is mandatory, regardless of the forms of relief sought and offered through administrative remedies. <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001). Exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance that was filed. The lower court must determine the sufficiency of the exhaustion in such case. <u>Jones</u>, 549 U.S. at 219.[4]

The PLRA requirement of "proper exhaustion" is fulfilled by complete compliance with the prison grievance procedures. <u>Jones</u>, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones</u>, 549 U.S. at 218.

---

[4] Defendants argue Hanks was required to name the individual Defendants in his grievance, prior to filing suit. Defendants cite <u>Curry v. Scott</u>, 249 F.3d 439 (6th Cir. 2001); <u>Gibbs v. Bolden</u>, 151 F.Supp.2d 854, 856-57 (E.D. Mich. 2001) for the notion that a prisoner must file a grievance against the person he ultimately seeks to sue in order to alert prison officials to possible problems with that person and/or the particular grievance against that person. The Supreme Court in <u>Jones</u> unanimously held that exhaustion is an affirmative defense which must be asserted by the defendant. <u>Jones</u>, 549 U.S. 199. The Supreme Court noted that nothing in 42 U.S.C, § 1997e imposes a "name all defendants" requirement along the lines of the Sixth Circuit's judicially created rule. <u>Jones</u>, 549 U.S. at 217. The primary purpose of the grievance is to alert prison officials to a problem to be addressed; it is not to provide personal notice to a particular official that he may be sued. <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004).

Further, the PLRA does not require the dismissal of the entire complaint, when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. Jones, 549 U.S. at 201.

The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 532 (2002).

Since exhaustion is an affirmative defense, the burden is on defendants to demonstrate the plaintiff failed to exhaust available administrative remedies. Jones, 549 U.S. at 216 (2007). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Id. Defendants must "establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment" in their favor. Dillon, 596 F.3d 260, 266 (5th Cir. 2010)(citing Martin v. Alamo Cmty. Coll. Dist., 353 F.3d 409, 412 (5th Cir. 2003)). Here, Defendants raised the affirmative defense of failure to exhaust available administrative remedies in their Answer to Hanks's Amended Complaint (Doc. 20).

### 3. Hanks did not properly exhaust administrative remedies prior to filing suit against AVC regarding allegations of deliberate indifference to his serious dental needs.

Defendants seek dismissal for Hanks's failure to file ARP and exhaust administrative remedies, prior to filing suit, regarding allegations of lack of dental care at AVC or by any of the named Defendants at AVC (Doc. 52). In assessing which issues are properly exhausted, the court must interpret the exhaustion requirement

9

in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally." Johnson, 385 F.3d at 516 (quoting Porter, 534 U.S. at 525); (see also Woodford v. Ngo, 548 U.S. 81 (2005)). "The grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." Johnson, 385 F.3d at 522. The specificity requirement should be interpreted in light of the grievance rules of the particular prison system. Johnson, 385 F.3d at 517.

Defendants have shown that Hanks failed to file any grievance with AVC, prior filing the instant suit, regarding allegations of deliberate indifference to his serious medical (dental) needs (Doc. 52). Defendants have shown, and Hanks in his Opposition has failed to refute, he first initiated his ARP with WNC (WNC-2015-48) against Daniel Marr alleging deliberate indifference to his serious dental needs (Doc. 6; Doc. 52; Doc. 62-1). Further, Defendants attached the entire administrative proceedings regarding Hanks during his incarceration at AVC, which show no ARPs were filed against AVC prior to the filing of this suit for allegations pertaining to Hanks's dental needs (52-3).[5] Defendants have shown Hanks first filed a grievance

---

[5] See Defendants' Exhibit A, an April 4, 2017 affidavit of Tara Bailey, Paralegal for DOC, Legal Services, Office of the Secretary. Bailey attests to the entire administrative proceedings regarding Hanks during his incarceration at AVC, attaching the only ARPs filed by Hanks while housed at AVC (Doc. 52-3; 1/41). ARP AVC-2016-204 related to charges for multiple sick calls for his dental care on July 28, 2015 and February 11, 2016 (Doc. 52-3, p. 14-17) (Hanks was credited back $2.00 for Motrin from his February 11, 2016 sick call as the charge was in error). ARP RLCC-2016-1220 related to requests for treatment related to facial fractures (Doc. 52-3, p. 26) (No complaints related to Hanks's dental issues or treatment were discussed or noted in said grievance).

with AVC (AVC-2015-1013) on October 29, 2015, after filing this suit (Doc. 52-3).[6] AVC shows no record of a grievance being filed with AVC prior to this date (Doc. 52-3). Hanks presented no evidence to refute that he failed to file a first step grievance as to AVC prior to initiating suit against Defendants (Doc. 6; Doc. 62).

Rather, Hanks has shown in his Opposition and attached exhibits that his ARP was filed with WNC against Daniel Marr regarding allegations of deliberate indifference to his dental needs while housed at WNC (Doc. 62-1). Hanks argues he was transferred to AVC on May 4, 2015, and shortly thereafter exhausted the "underlying" grievance, WNC-2015-48, on May 11, 2015 (Doc. 62-1). As to AVC, he alleges he placed a sick call on July 28, 2015, via Health Care Request Form,[7] with AVC for the pre-existing medical (dental) condition[8] he alleges continued at AVC (Doc. 62-1).

Defendants show WNC-2015-48 made no allegations pertaining to AVC's alleged denial of Hanks's serious dental needs, and that the ARP made no mention of any of the named AVC Defendants (Doc. 52). Rather, the ARP included review of WNC medical/dental staff, and review of Hanks's medical/dental records regarding treatment while housed at WNC (Doc. 6-1, p. 4).

Hanks contends the grievance filed against WNC, WNC-2015-48, satisfies his exhaustion requirement because his condition is pre-existing and continued to worsen

---

[6] AVC-2015-1013 made no mention of any allegations of denial of medical (dental) care, nor did it contain any similar allegations against Defendants (Doc. 52-3, p. 2-13).
[7] Hanks's Exhibit 3 (Doc. 62-3) is a Health Care Request Form, dated July 28, 2015, requesting to see the dentist for toothache, #1 and #2, top right teeth.
[8] Hanks attached as evidence of his pre-existing condition the AVC Health Screening, dated May 4, 2015, reflecting: "Cavities. Top and Bottom" (Doc. 62-3).

11

upon transfer to AVC (Doc. 62-1). He placed the July 28, 2015 sick call for his "pre-existing medical condition" just prior to being ordered to amend his complaint on August 11, 2015 (Doc. 62-1). Hanks argues his amended complaint merely clarifies existing allegations (which he argues were administratively exhausted) (Doc. 62-1). He makes a relation back argument stating that his new claim arises from the same facts alleged in his original pleading (Doc. 62-1).[9]

Hanks' original pleading consisted of claims against WCC and Marr for deliberate indifference to his serious dental needs while housed at WCC (Doc. 1). He was ordered to amend his complaint to provide more specific dates he requested dental care at WCC and dates he was examined by the dentist (Doc. 5). Hanks amended his complaint to include his requests for dental treatment at WCC (which he alleges were ignored), beginning on August 26, 2014 and continuing during his incarceration at WCC, including his January 25, 2015 request to Marr while housed at WCC (Doc. 6). He alleges he was assessed by a dentist upon arrival to AVC and made subsequent sick calls relating to his dental needs (Doc. 62). He added newly named defendants Sibley, Cain, and Dr. Smith, and alleges new claims of deliberate indifference to his serious dental needs while housed at AVC, beginning on July 28, 2015 (Doc. 6).

Hanks's claims of deliberate indifference against Sibley, Cain, and Dr. Smith regarding dental treatment, or lack thereof, while housed at AVC do not arise from dental treatment he received while housed at WCC. Technically, Hanks's claims

---

[9] Plaintiff cites Shariff v. Coombe, 655 F.Supp.2d 274, 284 (S.D.N.Y. 2009) and Jones, 549 U.S. at 214-17.

should have been filed as a new complaint. Regardless, the result would be the same: Hanks must properly exhaust his administrative remedies as to AVC under the PLRA, prior to initiating suit against AVC. See Johnson, 385 F.3d at 516. AVC should be given a fair opportunity to address internally the allegations that form the basis of the suit. See id. Complaints as to WNC's alleged deliberate indifference to Hanks's dental needs while housed at WNC are insufficient to apprise AVC or Defendants of any facts relating to allegations concerning dental care provided at AVC.

Defendants have established there is no genuine issue of material fact that AVC did not receive any grievance from Hanks, prior to filing suit, regarding his allegations that AVC or Defendants were deliberately indifferent to his serious dental needs. Hanks failed to establish in his Opposition or attached exhibits any genuine issue of material fact that he failed to exhaust his administrative remedies with AVC (Doc. 62). While the grievance need not name each official or provide personal notice to a particular official of his grievance, it must be sufficient to alert prison officials of a problem such that they may address the problem internally. See Jones, 549 U.S. at 217; see also, Johnson, 385 F.3d at 522.

Defendants further submits Defendant Nathan Cain (former warden at AVC) had no knowledge of Hank's dental condition at AVC, nor any knowledge he was claiming lack of dental care (Doc. 52). Hanks presented no evidence to establish Cain had any knowledge of any grievance prior to the filing of this suit (Doc. 6, Doc. 62). Hanks's grievance (WNC-2015-48), filed against WNC and Marr, was inadequate to

apprise AVC officials of Hanks's claim of deliberate indifference of necessary and adequate medical (dental) care by Defendants at AVC.

Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 548 U.S. at 89. It is clear from the record no grievance was filed with AVC prior to this suit pertaining to Hanks's dental needs or deliberate indifference to his dental needs. Therefore, there is no genuine issue of material fact Hanks did not exhaust his mandatory administrative remedies with AVC prior to filing suit. Exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under Section 1983. Woodford, 548 U.S. at 85 (citing Nussle, 534 U.S. at 524). Defendants are entitled to judgment as a matter of law.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 52) be GRANTED, and that Hanks' claims against Defendants be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 6th day of September, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge